IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | |
|---|---|
| ALERTUS TECHNOLOGIES, LLC<br>11785 Beltsville Drive<br>15th Floor<br>Calverton, Maryland 20705<br>Prince George's County<br><br>    Plaintiff,<br><br>v.<br><br>CALLINIZE, INC.<br>340 S. Lemon Avenue<br>#3005<br>Walnut, California 91789<br><br>    Serve on:<br>    INCORP SERVICES, INC.<br>    1201 Orange Street<br>    Ste 600<br>    One Commerce Center<br>    Wilmington, Delaware 19899<br><br>    Defendant. | Case No.: _____ |

## COMPLAINT

### Parties

1. Alertus Technologies, LLC ("Plaintiff" or "Alertus") is a Maryland Limited Liability Company with its offices located in Calverton, Maryland.

2. Alertus specializes in alert notification systems and solutions.

3. Callinize, Inc. ("Callinize") is a Delaware corporation with its principal place of business in California.

4. Callinize develops and sells phone and Customer Relationship Management ("CRM") system[1] integration software.

## Jurisdiction

5. Plaintiff repeats the allegations set forth in Paragraphs 1 through 4 as if set forth herein.

6. Because there is complete diversity of citizenship between the parties and, as stated in more detail, *infra*, the matter in controversy exceeds $75,000, this Court has subject matter jurisdiction to hear the claims of this Complaint pursuant to 28 U.S.C. § 1332.

7. The Court may exercise specific personal jurisdiction over Callinize pursuant to Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(3) because, as alleged more fully *infra*, the formation of Callinize and the misappropriation of intellectual property that provided the bulk of what Callinize would market to potential customers as its own innovations, took place in Maryland.

8. Venue is properly laid in this judicial district because, pursuant to 28 U.S.C. § 1391(b), a substantial part of the acts and omissions giving rise to the claims asserted herein occurred in Maryland.

## Facts

9. Plaintiff repeats the allegations set forth in Paragraphs 1 through 8 as if set forth herein.

10. Jason Volk ("Mr. Volk"), Chief Executive Officer and President of Alertus, founded Alertus in January of 2002, won grant funding in June of 2002, and registered the

---

[1] A CRM system stores customer and prospect contact information, accounts, leads and sales opportunities in one central location. It is a repository for the company's most precious business data.

Company with the State of Maryland in July of 2002.

11. In 2003, Mr. Volk met Blake Robertson, who also was a student at the University of Maryland, and Robertson was hired under one of the grants secured by Mr. Volk for Alertus.

12. In 2005, Mr. Volk and Robertson entered into a Memorandum of Agreement ("Agreement") regarding Alertus. The Agreement formalized Robertson becoming a minority member of Alertus, and it set out terms of ownership, voting rights and general responsibilities. Until that point, Mr. Volk had been the sole owner of Alertus.

13. Robertson was given equity with Alertus in consideration for his spearheading technical projects for the company.

14. One of the projects, conceived of by Mr. Volk, was finding a way to integrate Alertus' CRM system with its phone system to improve sales and Alertus' efficiency. Mr. Volk tasked Robertson with accomplishing an integration that would: (a) facilitate staff being able to rapidly place outbound calls by clicking a phone number in the CRM to initiate dialing; (b) enable staff to instantly know who was calling based upon the information pre-populated in the company's CRM; (c) automatically log the occurrence of a call and rapidly assist staff in recording notes to add a brief description of the call for company-wide reference; and (d) provide reports to track call activity by sales staff.

15. Robertson expended Alertus time, resources and money to develop this integration for Alertus over the course of several years. Robertson then misappropriated the results of this work product and re-branded it as an innovation of his own spin-off venture,

Callinize.[2]

16. Callinize was conjured and built with intellectual property, products and innovations that Robertson either stole from Alertus (and then re-branded under the Callinize banner) or that he developed using Alertus resources while ostensibly working for Alertus.[3] This came at great expense to Alertus in terms of both money and lost opportunities, as Robertson clandestinely established Callinize rather than affording Alertus the opportunity to capitalize on its development of new operational systems and its work product.

17. Callinize was incorporated in Delaware on November 19, 2014, but the company began taking shape in the years before then. Robertson registered Callinize LLC in Nevada on June 17, 2013 (the Nevada Secretary of State's web site currently lists Callinize LLC as being in default), and efforts to develop Callinize began in advance of that registration.

18. In 2012, Robertson attended SugarCon, Sugar CRM's annual conference, in San Francisco. There, on behalf of Alertus, he made a presentation on the Sugar CRM/Asterisk Integration which he had been developing specifically for Alertus. Just days later, on April 20, 2012, Robertson posted a video on YouTube in which he displayed the integration. Then, at some point, Robertson added a note below the video on YouTube that the displayed software had "gotten a lot better," and directed viewers to www.callinize.com.

19. After Mr. Volk tasked Robertson, then Alertus' Chief Technology Officer, with identifying a solution for integrating the company's CRM and phone system, Robertson pressed

---

[2] Some of Robertson's marketing materials for Callinize state that Callinize was "formerly known as yaai," which was the name of the project Robertson undertook at Mr. Volk's direction for Alertus.

[3] GitHub repositories indicate when software code has been added or updated, and they show that during his work hours, Robertson spent an overwhelming majority of his time developing software that he eventually would take and market for Callinize.

4

for Alertus to switch its CRM and phone system to Sugar CRM and Asterisk, respectively, in large part because he believed he could integrate those systems.

20.     Alertus made the changes to Sugar CRM and Asterisk, but Robertson had considerable trouble completing the integration and sustaining the systems. Alertus endured constant problems and glitches.

21.     Because of the problems, which were severely inhibiting Alertus and its sales operations, Mr. Volk wanted Alertus to switch back to its original CRM and phone system. Robertson, however, obstructed the ability of the company to revert back to Salesforce CRM and RingCentral and, upon information and belief, spent thousands of hours of time and wastefully used Alertus personnel and resources to work on the integration.

22.     Essentially, Robertson used Alertus as the development lab and test bed for Callinize.

23.     Callinize's marketing extensively uses screenshots from Alertus' systems.

24.     Incredibly, Callinize now states that it will link any phone and CRM system, specifically highlighting Salesforce CRM and RingCentral, the two systems Alertus possessed prior to Robertson downgrading to Sugar CRM and Asterisk. In previous years, including during the time Alertus experienced glitches with Sugar CRM, Robertson had claimed it was not feasible to integrate RingCentral and Salesforce for Alertus.

25.     Callinize also is marketing a "click-to-dial" innovation that Robertson developed for Alertus and then misappropriated.

26.     Mr. Volk and sales staff at Alertus wanted to find a way to add a "click-to-dial" function to the Google Docs spreadsheets within Alertus' Google Drive productivity software,

and Mr. Volk tasked Robertson in 2014 with developing such a function for Alertus personnel.

27. While Robertson was supposedly unable to complete this project for Alertus, months later Mr. Volk found that the Callinize web site was offering a way to make phone numbers within spreadsheets, specifically Google Docs spreadsheets, "click-to-dialable."

28. Robertson developed Callinize while keeping the spinoff secret from Alertus personnel and Mr. Volk. It was not until Robertson sent Mr. Volk – seemingly inadvertently – an email from an "@callinize.com" address, on March 20, 2014, that Mr. Volk first asked, "What is Callinize?"

29. Robertson provided a guarded and indirect response, so Mr. Volk began investigating and learned that the software developed for Alertus had been spun off for Robertson's new company.

30. Through his investigation, Mr. Volk found that Alertus email systems were being used to sell and support Callinize. Further investigation began to uncover the incredible amount of Alertus time and resources that had been used by Robertson to build Callinize. It also further explained why Alertus' principal activities were not being completed.

31. While Alertus projects and development have suffered as a result of Robertson's concentration on Callinize and ignoring Alertus' core projects, Callinize has grown.

32. Upon information and belief, Callinize's monthly recurring revenue increased from $3,000 to $12,000 in less than two months earlier this year. In addition, Callinize has hired staff, is advertising for more positions, is actively seeking a $2,000,000 investment and has filed patent applications for intellectual property.

33. Callinize has grown and benefited thanks almost entirely to ideas conceptualized

6

and evolved at Alertus, innovations and products that were developed with Alertus resources, and other Alertus data and information (collectively, "Intellectual Property").

34. Such Intellectual Property includes the software code used to integrate CRM and phone systems and the aforementioned "click-to-dial" function, which Robertson helped develop with Alertus resources while representing that he was working for Alertus. The Intellectual Property also includes the code sequence Alertus uses for its pop-up mass notification software that Robertson, upon information and belief, stole and uses for Callinize's pop-up call software.

35. In short, Callinize is built on stolen Intellectual Property and systems that were built by Alertus and for Alertus.

## COUNT I
## Misappropriation of Trade Secrets Under Md. Code, Commercial Law § 11-1201, *et seq.*

36. Plaintiff repeats the allegations set forth in Paragraphs 1 through 35 as if set forth herein.

37. Alertus possessed numerous valid trade secrets, including:

- Software code developed for Alertus products used by customers;

- Alertus' software code for pop-up capability in its notification software;

- Software code developed for Alertus operational systems;

- Alertus' click-to-dial capability;

- Business processes data; and

- Proprietary information, including information about customers.

38. The software code, data and proprietary information described above derived independent economic value from not being generally known to, and not being readily ascertainable by proper means by, other persons who could obtain economic value from its

disclosure or use.

39. Alertus took pains to maintain the secrecy of the above described software code, data and proprietary information, which was available only to a limited number of employees.

40. Callinize has acquired the above-described trade secrets.

41. Callinize knew or should have known that the above described trade secrets were acquired by improper means.

42. The software code, data and proprietary information is valuable to Callinize and to other Alertus competitors.

43. Callinize has acted willfully and maliciously in misappropriating the software code, data and proprietary information.

44. Use of the software code, data and proprietary information has caused harm of an economic and non-economic nature to Alertus, including, but not limited to, a loss of competitive advantage as well as revenues. The release of software code, data and proprietary information for unauthorized uses and the access to the software code, data and proprietary information gained by unauthorized parties exposes Alertus to undue risks.

WHEREFORE, Alertus Technologies, LLC demands judgment against Blake Robertson for compensatory damages in the amount of $4,000,000.00 ($2,000,000.00 for the actual loss and $2,000,000.00 for the unjust enrichment caused by the misappropriation), plus post-judgment interest, costs, $8,000,000.00 in punitive damages, and such other and further relief as the Court deems just and proper.

## COUNT II
### Unjust Enrichment in Violation of Maryland Common Law

45. Plaintiff repeats the allegations set forth in Paragraphs 1 through 44 as if set forth

herein.

46. Robertson misappropriated Alertus' Intellectual Property, including trade secrets, and assets, and used them to develop and grow Callinize while still working for and serving as a member of Alertus.

47. As such, Alertus has inadvertently conferred a benefit on Callinize, as Callinize has grown and profited as a direct result of its use of the misappropriated Intellectual Property and assets.

48. Callinize has knowledge of and appreciates the benefit, as it actively is using the Intellectual Property and assets, and marketing them as its own.

49. Considering that the ideas for the Intellectual Property, and the Intellectual Property itself, were conceived by Alertus personnel in the course of Alertus activities, developed with Alertus resources and by its personnel, and then misappropriated by Robertson and given to Callinize, and that the assets were misappropriated and bestowed upon Callinize, the circumstances are such that it would be inequitable for Callinize to retain the benefit without payment of its value to Alertus.

WHEREFORE, Alertus Technologies, LLC demands judgment against Callinize, Inc. for compensatory damages in the amount of $8,000,000.00, plus post-judgment interest, Callinize's past and future profits, costs and for such other and further relief as the Court deems just and proper.

## COUNT III
### Constructive Trust

50. Plaintiff repeats the allegations set forth in Paragraphs 1 through 49 as if set forth herein.

51. Callinize has acquired Intellectual Property, including trade secrets, and assets belonging to Alertus.

52. The Intellectual Property and assets were acquired through improper means, specifically misappropriation by Robertson.

53. Callinize, essentially, was built by and consists of the Intellectual Property and assets of Alertus.

54. As such, Callinize has been unjustly enriched and the circumstances are such that it would be inequitable for Callinize to retain the benefits of such Intellectual Property and assets.

55. Under the circumstances, it is appropriate for the Court to impose a Constructive Trust against Callinize in the amount equal to the value of the Intellectual Property and assets Defendant diverted from the Company.

WHEREFORE, Alertus Technologies, LLC demands this Court: (a) Charge upon Callinize a Constructive Trust in an amount equal to the Intellectual Property and assets it wrongfully acquired from Alertus, but in no case less than $8,000,000.00; (b) Award pre-judgment interest on this principal sum at the legal rate, commencing from the respective dates when Callinize acquired said Intellectual Property and assets; and (c) award Alertus the reasonable attorneys' fees, expert fees and costs incurred in pursuing this claim.

## COUNT IV
### Injunctive Relief

56. Plaintiff repeats the allegations set forth in Paragraphs 1 through 55 as if set forth herein.

57. Plaintiff requests and seeks the entry of an Order imposing preliminary and

permanent restraints to enjoin Callinize from using the Intellectual Property and assets misappropriated from Alertus.

58. Plaintiff has a right to the exclusive use of the Intellectual Property and assets, as they were conceived by Alertus personnel in the course of Alertus activities and developed with Alertus resources and by its personnel.

59. Such right to the exclusive use of the Intellectual Property and assets will be irreparably injured if Callinize is permitted to use and profit from the use sale of such Intellectual Property and assets.

60. Should the Court grant these preliminary and permanent restraints, the benefit to Alertus in obtaining the requested restraints and/or preliminary injunction will greatly outweigh the potential harm Callinize might incur because it is not entitled to retain and/or use the Intellectual Property and assets for its benefit.

61. Should the Court deny Alertus' request for interlocutory and permanent restraints, Alertus will suffer irreparable harm.

62. The public interest is best served by granting Alertus' request, as such misappropriation for personal gain should be discouraged.

WHEREFORE, Alertus respectfully requests preliminary and permanent injunctions against Callinize compelling Callinize to (a) cease use of the Intellectual Property and assets; (b) return any and all Intellectual Property and assets to Alertus; and (c) destroy any and all Intellectual Property that cannot, for any reason, be returned to Alertus.

Respectfully submitted,

SHULMAN, ROGERS, GANDAL,
PORDY & ECKER, P.A.

By: _____
Glenn C. Etelson (#6760)
12505 Park Potomac Avenue, 6th Floor
Potomac, MD 20854
(301) 231-0956
(301) 230-2891 (facsimile)
getelson@shulmanrogers.com
*Attorney for Plaintiff*

5831731_1.docx